United States Courts
Southern District of Texas
FILED

*April 18, 2023*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **7:22-CR-1311-S1** |
| | § | |
| **OSAMA BACHIR NAHAS** | § | |
| **ISABEL MORENO PRUNEDA** | § | |

<u>**SUPERSEDING INDICTMENT**</u>

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

<u>**The Defendants and Related Entities and Individuals**</u>

1.     OSAMA BACHIR NAHAS was a resident of Hidalgo County, Texas and a physician licensed to practice medicine in the State of Texas.

2.     Crosspoint Medical Clinic was a medical clinic operated by OSAMA BACHIR NAHAS doing business in Hidalgo County, Texas and elsewhere.

3.     ISABEL MORENO PRUNEDA was a resident of Hidalgo County, Texas and an employee of Crosspoint Medical Clinic.

<u>**The Medicare Program**</u>

4.     The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.   The benefits available under Medicare were governed by federal statutes and regulations.   The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

1

Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

5. Medicare covered different types of benefits, which were separated into different program "parts." Medicare "Part B" was a medical insurance program that covered, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits, and laboratory testing, that were medically necessary and ordered by licensed medical doctors or other qualified health care providers. Medicare "Part D" subsidized the costs of prescription drugs for Medicare beneficiaries.

6. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## COUNT 1
## <u>CONSPIRACY TO COMMIT HEALTH CARE FRAUD</u>
**(18 U.S.C. § 1349)**

7. Paragraphs 1 through 6 are incorporated herein by reference.

8. From in or about January 2016 and continuing through in or about December 2017, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**OSAMA BACHIR NAHAS**
and
**ISABEL MORENO PRUNEDA**

knowingly and willfully did combine, conspire, confederate and agree with each other and others known and unknown, to violate Title 18, United States Code, Section 1347, and to execute a scheme or artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and

2

under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits items and services.

## Purpose of the Conspiracy

9. It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things, submitting and causing the submission of false and fraudulent claims to healthcare benefit programs, such as Medicare, and diverting proceeds of the fraud for the personal use and benefit of defendants and their co-conspirators.

## Manner and Means of the Conspiracy

10. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

a. OSAMA BACHIR NAHAS and members of his staff, including ISABEL MORENO PRUNEDA, regularly traveled to various adult day care facilities located within Hidalgo County, Texas and elsewhere.

b. OSAMA BACHIR NAHAS paid kickbacks, or caused the payment of kickbacks, disguised as "rent," to gain access to Medicare beneficiaries at adult day care facilities.

c. Under the guise of providing medical services, OSAMA BACHIR NAHAS purported to examine, test, and treat elderly and disabled individuals at adult day care facilities.

d. Many of the elderly and disabled individuls examined by OSAMA BACHIR NAHAS at adult day care facilities had their own primary care physicians, who were not consulted prior to, or after, the patient's examination.

e. In addition, many of the elderly and disabled individuals examined by OSAMA BACHIR NAHAS at adult day care facilities were under the care and guardianship of family members, guardians, and caretakers who were not consulted prior to, during, or after the individual's examination by OSAMA BACHIR NAHAS.

f. OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA obtained specimens, including urine specimens, from elderly and disabled individuals at adult day care facilities under false pretenses, without informing the individual or the individual's guardian, that the specimen would be sent to a third-party laboratory testing company, and without obtaining the consent of the individual, or the individual's caretaker or guardian.

g. OSAMA BACHIR NAHAS, and others acting under his direction, including ISABEL MORENO PRUNEDA, offered enticements to elderly and disabled individuals at adult day care facilities, including offers of a "massage" and "free" prescription medication, in exchange for agreeing to submit to examinations, tests, and other procedures.

h. OSAMA BACHIR NAHAS, and others acting under his direction, coerced and manipulated elderly and disabled individuals at adult day care facilities to submit to examination, testing, and other purported medical procedures that were not wanted or needed.

i. For elderely and disabled individuals purportedly examined by OSAMA BACHIR NAHAS at adult day care facilities, OSAMA BACHIR NAHAS, ISABEL MORENO PRUNEDA, and others gained access to such individuals' personally identifiable information ("PII"), including names, birthdates, addresses, and Medicare numbers.

4

j.      Marketer-1, a co-conspirator marketer, working with various laboratory testing companies, including Laboratory-1, paid kickbacks to OSAMA BACHIR NAHAS to induce OSAMA BACHIR NAHAS to order laboratory tests for Medicare beneficiaries.

k.      Marketer-1 and OSAMA BACHIR NAHAS falsely disguised kickback payments as payments for office space and equipment rental.

l.      In exchange for the kickbacks from Marketer-1, OSAMA BACHIR NAHAS ordered, or directed the ordering of, laboratory tests for Medicare beneficiaries at adult day care facilities to be sent to laboratory testing companies associated with Marketer-1.

m.      Marketer-1 also paid, or caused the payment of, kickbacks to ISABEL MORENO PRUNEDA to induce the referral of orders for laboratory tests for Medicare beneficiaries, including elderly and disabled individuals at adult day care facilities, to be sent to laboratory testing companies associated with Marketer-1.

n.      Medicare was billed approximately $886,000 by laboratory testing companies associated with Marketer-1 for tests ordered by OSAMA BACHIR NAHAS.

o.      Marketer-2, another co-conspirator marketer, paid, or caused the payment of, kickbacks to ISABEL MORENO PRUNEDA in exchange for causing prescriptions for medication and orders for laboratory testing services to be issued by OSAMA BACHIR NAHAS.

p.      Marketer-2 paid kickbacks, in the form of illegal inducements, including the promise of providing a "free" mobile medical clinic, to OSAMA BACHIR NAHAS in exchange for causing prescriptions for medication and orders for laboratory testing services to be issued by OSAMA BACHIR NAHAS to companies associated with Marketer-2.

q. In exchange for the kickbacks from Marketer-2, ISABEL MORENO PRUNEDA completed, or caused to be completed, prescriptions for medication and orders for laboratory testing services for elderly and disabled individuals at adult day care facilities in the name of OSAMA BACHIR NAHAS.

r. ISABEL MORENO PRUNEDA sent, or caused to be sent, prescriptions for medication to Pharmacy-1, a pharmacy located in or around San Antonio, Texas.

s. ISABEL MORENO PRUNEDA sent the prescriptions for medication to Pharmacy-1 without offering the individual for whom the prescription was written an option to send the prescription to a different pharmacy.

t. In some instances, elderly and disabled individuals at adult day care facilities were unaware that prescriptions were sent to Pharmacy-1 in their name, did not consent to the ordering of any such medications, and did not want or need the medication.

u. ISABEL MORENO PRUNEDA forged, or caused to be forged, signatures of elderly and disabled individuals on forms related to the prescriptions sent to Pharmacy-1, including patient consent forms purporting to direct Pharmacy-1 to send prescribed medication to Crosspoint Medical Clinic instead of sending the medication directly to the individual for whom the medication was prescribed.

v. When prescription medication was sent from Pharmacy-1 to Crosspoint Medical Clinic, ISABEL MORENO PRUNEDA, and others known and unknown, misappropriated the medication from individuals, at times providing individuals with a small portion of the medication for which Medicare had paid, or failing to provide the individual with any medication at all.

w. In exchange for kickbacks from Marketer-2, and under the guise of

providing medical treatment by OSAMA BACHIR NAHAS, ISABEL MORENO PRUNEDA also obtained specimens, including blood and urine specimens, from elderly and disabled indivduals at adult day care facilities.

x.      OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA sent, or caused to be sent, medically unnecessary orders for laboratory testing services to companies associated with Marketer-2, often without the knowledge, consent, or authorization of the individual from whom the specimen was taken, or that individual's guardian or caretaker.

y.      Medicare was billed approximately $2.8 Million by Pharmacy-1 and laboratory testing companies associated with Marketer-2, for prescriptions and laboratory tests ordered by OSAMA BACHIR NAHAS.

z.      Marketer-3, was another co-conspirator marketer.

aa.     Marketer-3 provided OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA and clinic staff with access to adult day care facilities.  Marketer-3 used his access to, and influence over, elderly and disabled individuals at adult day care facilities to induce the individuals to submit to purported examination, testing, and other procedures by OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA.

bb.     In exchange, OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA referred prescriptions for medication to Pharmacy-2, a pharmacy doing business in and around Hidalgo County, Texas.

cc.     Pharmacy-2 paid commissions to Marketer-3 for prescriptions referred by OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA.

dd.     Later, Marketer-3 also facilitated the referral of prescriptions for elderly and

7

disabled individuals at adult day care facilities to Pharmacy-1 in exchange for cash kickbacks.

ee. Medicare was billed approximately $325,000 by Pharmacy-2 for prescriptions ordered by OSAMA BACHIR NAHAS.

ff. OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA coerced and manipulated elderly and disabled individuals at adult day care facilities into undergoing medically unnecessary tests and procedures.

gg. OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA sent, or caused to be sent, orders for medically unnecessary laboratory testing services to laboratory testing companies associated with Marketer-1 and Marketer-2 in exchange for kickbacks.

hh. OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA caused Medicare to be billed for prescriptions that were not delivered to Medicare beneficiaries.

ii. ISABEL MORENO PRUNEDA forged the signatures of elderly and disabled patients on medical consent forms and other medical records.

jj. ISABEL MORENO PRUNEDA manipulated elderly and disabled individuals into signing consent forms, which the individuals did not understand, and without explaining the forms to the individuals, or informing the individuals, or the individudals' guardian or caretaker, what would be done with the collected specimen. For example, ISABEL MORENO PRUNEDA concealed from elderly and disabled individuals that their specimen would be sent to third-party testing companies to be tested for illicit drugs, like cocaine, methamphetamine, and bath salts.

kk. OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA caused Medicare to be billed for false and fraudulent prescriptions for medication.

8

ll.     OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA caused Medicare to be billed for false and fraudulent tests by third-party testing companies, including laboratory testing services in exchange for kickbacks and illegal inducements.

mm.     OSAMA BACHIR NAHAS and ISABEL MORENO caused Medicare to be billed for false and fraudulent claims for "chronic care management" that was not agreed to, and in many instances, not provided to Medicare beneficiaries.

nn.     In total, OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA caused Medicare to be billed for more than approximately $3.7 Million in prescriptions laboratory tests from pharmacies and companies associated with with Marketer-1, Marketer-2, and Marketer-3.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-8

### HEALTH CARE FRAUD
**(18 U.S.C. §§ 1347 and 2)**

11.     Paragraphs 1-6 and 10 are incorporated herein by reference.

12.     On or about the dates listed below, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**OSAMA BACHIR NAHAS**
and
**ISABEL MORENO PRUNEDA**

along with others known and unknown, in connection with the delivery of and payment for health care benefits, items and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting interstate commerce, as defined in Title 18, United States Code, Section 24(b), that is Medicare, and to obtain by means of

9

materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, all in violation of Title 18, United States Code, Section 1347.

13.     For the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, defendants caused the transmission of the following false and fraudulent claims to Medicare, which were for the beneficiaries, items or services, approximate dates, and claim amounts listed below.

| Count | Beneficiary | Item or Service Ordered or Prescribed | Date (on or about) | Billing Entity | Medicare Claim Amount |
|---|---|---|---|---|---|
| 2 | H.A. | Drug Test | 9/19/2017 | Laboratory-1 | $1,758.00 |
| 3 | C.G. | Rx# 31319 | 8/18/2017 | Pharmacy-1 | $186.60 |
| 4 | J.G.S. | Rx# 31602 | 8/21/2017 | Pharmacy-1 | $164.96 |
| 5 | B.M. | Rx# 33483 | 10/10/2017 | Pharmacy-1 | $1,992.17 |
| 6 | J.A.M. | Drug Test | 9/26/2017 | Laboratory-1 | $2,008.00 |
| 7 | M.V. | Rx# 31354 | 8/21/2017 | Pharmacy-1 | $176.31 |
| 8 | P.P. | Drug Test | 11/16/2017 | Laboratory-1 | $2,008.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 9-14

## AGGRAVATED IDENTITY THEFT
### (18 U.S.C. § 1028A and 2)

14.     Paragraphs 1-6 and 10 are incorporated herein by reference.

15. On or about the dates listed below, the exact dates being unknown, in the Southern District of Texas, and elsewhere

**OSAMA BACHIR NAHAS**
and
**ISABEL MORENO PRUNEDA**

defendants herein, aided and abetted by each other and others known and unknown, did knowingly transfer, possess and use, without lawful authority, a means of identification of another person, to-wit, the date of birth, social security number, Medicare number, address, and other unique personally identifiable information of the beneficiaries set forth in the table below during and in relation to a violation of Title 18, United States Code, Sections 1349 and 1347 (conspiracy to commit health care fraud, and health care fraud).

| Count | Beneficiary | Last 4 Digits of Social Security Number | Date (on or about) |
|---|---|---|---|
| 9 | H.A. | 9792 | 9/19/2017 |
| 10 | C.G. | 3116 | 8/18/2017 |
| 11 | J.G.S. | 6544 | 8/21/2017 |
| 12 | J.A.M. | 0458 | 9/26/2017 |
| 13 | M.V. | 1311 | 8/21/2017 |
| 14 | P.P. | 7199 | 11/16/2017 |

All in violation of Title 18, United States Code, Sections 1028A and 2.

**COUNT 15**
**CONSPIRACY TO PAY AND RECEIVE ILLEGAL REMUNERATIONS**
**(18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b))**

16.    Paragraphs 1-6 and 10 are incorporated herein by reference.

17.    From in or around January 2016 and continuing through in or around December 2017, the exact dates being unknown, in the Southern District of Texas and elsewhere, defendants

**OSAMA BACHIR NAHAS**
and
**ISABEL MORENO PRUNEDA**

knowingly and willfully did combine, conspire, confederate and agree with each other and others known and unknown, to commit certain offenses against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare and other Federal health care benefit programs; and for the purchasing, leasing, ordering, and arranging for, and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole or in part by a Federal healthcare program; and

**Purpose of the Conspiracy**

18.    It was a purpose of the conspiracy for defendants, their co-conspirators, and others known and unknown, to unlawfully enrich themselves by paying and receiving kickbacks in exchange for the referral of prescriptions and laboratory tests for which third party entities submitted claims to Medicare.

12

**Manner and Means of the Conspiracy**

19. The manner and means by which defendants and their co-conspirators sought to accomplish the objects of the conspiracy included, but were not limited to, the following:

a. Marketer-1, a co-conspirator marketer, working with various laboratory testing companies, including Laboratory-1, offered, paid, and caused to be paid, kickbacks to OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA in return for the referral of orders for laboratory tests to testing companies associated with Marketer-1.

b. Marketer-1 and OSAMA BACHIR NAHAS falsely disguised kickbacks as payments for office and equipment rental.

c. In exchange for the kickbacks from Marketer-1, OSAMA BACHIR NAHAS and ISABEL MORENO PRUNEDA referred, or caused the referral of, laboratory tests for elderly and disabled individuals at adult day care facilities from laboratory testing companies associated with Marketer-1.

d. The laboratory testing companies associated with Marketer-1 billed Medicare for the laboratory tests ordered by OSAMA BACHIR NAHAS.

e. OSAMA BACHIR NAHAS solicited kickbacks from Marketer-2 in exchange for referring prescriptions to Pharmacy-1, including prescriptions for Medicare beneficiaries.

f. Marketer-2 offered kickbacks to OSAMA BACHIR NAHAS in exchange for referring prescriptions to Pharmacy-1, including prescriptions for Medicare beneficiaries.

g. Marketer-2 paid and offered kickbacks to ISABEL MORENO PRUNEDA in exchange for causing the referral of prescriptions to Pharmacy-1 and laboratory tests to

laboratory testing companies associated with Marketer-2.

h.     Pharmacy-1 billed Medicare for prescriptions ordered by OSAMA BACHIR NAHAS.

i.     Laboratory testing companies associated with Marketer-2 billed Medicare for laboratory tests ordered by OSAMA BACHIR NAHAS.

## OVERT ACTS

20.     In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, the following overt acts:

a.     On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MARKETER-1 paid money drawn on a bank account at Wells Fargo Bank, account number ending in 9608, to the co-conspirators, in the approximate amounts listed below:

| Overt Act | Date (on or about) | Payee | Amount | Check No. |
|---|---|---|---|---|
| a.1 | 8/25/2017 | OSAMA BACHIR NAHAS | $3,000.00 | 5000 |
| a.2 | 9/6/2017 | ISABEL MORENO PRUNEDA | $1,200.00 | 1001 |
| a.3 | 9/28/2017 | OSAMA BACHIR NAHAS | $2,000.00 | 5001 |
| a.4 | 9/28/2017 | ISABEL MORENO PRUNEDA | $1,000.00 | 5002 |
| a.5 | 10/18/2017 | ISABEL MORENO PRUNEDA | $1,000.00 | 1105 |
| a.6 | 10/26/2017 | OSAMA BACHIR NAHAS | $2,000.00 | 1102 |
| a.7 | 11/15/2017 | ISABEL MORENO PRUNEDA | $2,000.00 | 1002 |

All in violation of Title 18, United States Code Section 371.

## NOTICE OF CRIMINAL FORFEITURE

### (18 U.S.C. § 982(a)(7))

The allegations contained in Counts 1-8 and 15 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a conspiracy to violate section 1347 or 1349 in violation of Title 18, United States Code, Section 371, the defendants shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

## NOTICE OF CRIMINAL FORFEITURE

### (18 U.S.C. §§ 982(a)(2)(B) and 1028(b)(5))

The allegations contained in Counts 9-14 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1028(b)(5).

Upon conviction of the offenses in violation of Title 18, United States Code, Section 1028 set forth in Counts 9-14 of this Indictment, the defendants, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s), and pursuant to Title 18, United States Code, Section 1028(b)(5), any personal property used or intended to be used to commit the offense(s).

## MONEY JUDGMENT

The United States gives notice that it will seek a money judgment against defendants.

## SUBSTITUTE ASSETS

In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

A TRUE BILL:

_____
FOREPERSON

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

_____
ANDREW R. SWARTZ
ASSISTANT UNITED STATES ATTORNEY

_____
BRAD R. GRAY
ASSISTANT UNITED STATES ATTORNEY